Christopher J. Reichman  SBN 250485
PRATO & REICHMAN, APC
8555 Aero Drive, Suite 303
San Diego, CA 92123
Telephone: 619-683-7971
Email: chrisr@prato-reichman.com

Attorney for Plaintiff
PAUL SAPAN

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SOUTHERN DIVISON

| | |
|---|---|
| PAUL SAPAN,<br><br>        Plaintiff,<br>   vs.<br><br>POWER HOME TECHNOLOGIES, LLC, a North Carolina Limited Liability Company,<br>BEN BROOKHART, an individual,<br>and ERIK RANDESI, an individual,<br><br>        Defendants. | Case No.:<br><br>**COMPLAINT FOR DAMAGES, INCLUDING PUNITIVE DAMAGES, INTEREST AND ATTORNEY'S FEES, AND FOR INJUNCTIVE RELIEF**<br><br>**Violation(s) of Telephone Consumer Protection Act of 1991**<br>**Trespass to Chattel**<br>**Unfair Business Practices** |

COMES NOW Plaintiff PAUL SAPAN (hereinafter referred to as "Plaintiff") who alleges as follows:

- 1 -
Complaint

## JURISDICTIONAL ALLEGATIONS

1. Plaintiff is, and at all times herein mentioned was, a resident of the County of Los Angeles, but has recently moved to the County of Orange, State of California.

2. Defendant POWER HOME TECHNOLOGIES, LLC ("PHT") is, and at all times herein mentioned was, a North Carolina Limited Liability Company, doing business in the County of Los Angeles, State of California.

3. Defendant BEN BROOKHART ("Mr. Brookhart") is, and at all times herein mentioned was, an individual doing business in the County of Los Angeles, State of California.

4. Defendant ERICK RANDESI ("Mr. Randesi") is, and at all times herein mentioned was, an individual doing business in the County of Los Angeles, State of California.

5. This case is filed pursuant to the Telephone Consumer Protection Act of 1991, 47 U.S.C. §227 et. seq. The U.S. Supreme Court recently decided that federals courts have federal question subject matter jurisdiction over such civil actions under 28 U.S.C. §§ 1331 and 1441. *Mims v. Arrow Fin. Services, LLC*, -- U.S. --, 132 S.Ct. 740, 753 (2012). The state law claim herein arises out of a common nucleus of operative facts and is subject to supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

6. At all times herein mentioned each defendant was the partner, agent and employee of each co-defendant herein and was at all times acting within the scope of such partnership, agency and employment and each defendant ratified the conduct of each co-defendant herein.

**FACTUAL SUMMARY**

7. Defendants made two (2) prerecorded calls to PAUL SAPAN's home phone number (310-444-1999) wherein they tried to pitch their debt consultancy services on the following dates and times and using the following Caller ID ("CID") number:

- March 6, 2013 at 10:25am, CID 701-929-0159
- March 11, 2013 at 4:40pm, CID 360-322-6493

8. Mr. Sapan's home phone has been listed on the federal "Do Not Call" registry maintained by the Federal Trade Commission from December 23, 2007 to the present.

9. While each of the calls complained of above used a Caller ID number, neither of them transmitted any Caller ID name information as required by law. 47 C.F.R. § 64.1601(e).

10. On March 6, 2013 at 10:25 am, Defendants called Mr. Sapan's home telephone transmitting a CID of 701-929-0159.

Complaint

11. Mr. Sapan answered the call and prerecorded message claiming to offer a "free" home security system immediately played. It said that the FBI has reported increased crime and then pitched a "free" home security system for which Mr. Sapan would have to purchase the monthly monitoring fees. The message nowhere gave any company name or identifying information and asked the call victim to press 1 if interested.

12. Mr. Sapan did press 1 solely in order to figure out who was making the call and why, but the call was dropped.

13. Plaintiff alleges on information and belief that Defendants made this call for the purpose of selling their alarm systems and monitoring services because it came mere days before the next call and it played the exact same message as the next call.

14. On March 11, 2013 at 4:40pm, Defendants called Mr. Sapan's home telephone transmitting a CID of 360-322-6493.

15. The exact same recording as in the previous call played and again asked Mr. Sapan to press 1 again.

16. Mr. Sapan did press 1 solely in order to figure out who was making the call and why, and was connected to someone who said he was "Vince" from "Secure America" who said he would have an installer call right back.

17. Moments later Defendants had a representative named "Mitch" call

using CID 561-465-2658, and he and Mr. Sapan spoke but Mr. Sapan had other business to attend to and had to end the call before he got the name of the company responsible for these calls.

18. Mr. Sapan called the CID 561-465-2658 back later that day and the person who answered said they were with Power Home Technologies, Inc.

19. On April 11, 2013, Power Home Technologies, Inc., a Delaware corporation was merged into Power Home Technologies, LLC, a North Carolina limited liability company, with both officers remaining the same and no change in corporate ownership, assets, or liabilities.

20. Shortly after these calls, Mr. Sapan performed a Google search for PHt and quickly found them listed with the BBB and their corporate registration.

21. Mr. Sapan is familiar with these sorts of "press 1" calling campaigns and knows that representatives often sue generic sounding names during the early part of the call to evade detection and liability for their illegal calling.

22. Mr. Sapan dutifully Googled for "Secure America" using a number of permutations including all the CID numbers used in the calls and cross searching that vague and generic-sounding name with PHT's name and never found any real company using that name or any logical permutations thereof.

23. Plaintiff pleads on information and belief that "Secure America" is a completely false generic-sounding name that was used by PHT personnel or their

- 5 -
Complaint

agents when making sales calls to try to evade detection by authorities and privacy advocate litigants like Mr. Sapan.

24. Mr. Sapan alleges on information and belief that Defendants also transmitted the other calls, which went unanswered, to pitch the same debt consultancy services.

25. None of the calls complained of were introduced by a live natural person as required by the California Consumer Legal Remedies Act.

26. And none of the recordings complained of identify who was calling to offer these alarms systems and monitoring services as required by both federal and California law.

**Liability of Power Home Technologies, LLC**

27. During the two prerecorded calls the prerecorded messages did not say who was actually calling and just asked Mr. Sapan to "press 1" if he was interested.

28. Mr. Sapan did so in order to find out who was actually behind these annoying telemarketing calls.

29. "Purporting to obtain consent during the call, such as requesting that a consumer "press 1" to receive further information, does not constitute the prior consent necessary to deliver the message in the first place, as the request to 'press

1' is part of the telemarketing call." In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 FCC Rcd 14099, FCC 03-153 ¶ 142 (FCC, July 3, 2003).

30. As recited above, the contemporaneous call notes show that Power Home Technologies, LLC was ultimately the company offering the alarms and services being advertised during the calls.

31. To the extent that one call mentioned "Secure America", Plaintiff pleads on information and belief that "Secure America" is a completely false generic-sounding name that was used by PHT personnel or their agents when making sales calls to try to evade detection by authorities and privacy advocate litigants like Mr. Sapan.

32. To the extent that the calls may have used a telemarketing agent to set up a "hot transfer" to PHT, Plaintiff alleges on information and belief that this agent was authorized to act on PHT's behalf in making the calls and transferring the call or getting PHT to make immediate callbacks, or alternatively that this agent appeared to be operating with PHT's blessing and working hand in glove with them to make calls about alarm systems and service that were transferred or led to a callback by PHT, or alternatively that that Defendants ratified their conduct after the fact by making multiple calls and never repudiating or suing their agent for the liability caused.

33. As alleged above, the corporate name was Power Home Technologies, Inc. of Delaware at the time of the calls and that entity was merged into the current Power Home Technologies, LLC ("PHT"), the defendant in this case.

34. To the extent that Power Home Technologies, Inc. of Delaware may claim lack of identity with the current PHT, Plaintiff alleges on information and belief that the transfer of corporate assets was not an arm's length transaction because all the assets and officers remained the same and that the current PHT is merely a fraudulently transferred alter ego of the former Delaware corporation.

### Liability of PHT's Corporate Officers

35. Defendant Ben Brookhart is, and at all times herein mentioned was, the CEO of Defendant PHT.

36. Defendant Erik Randesi is, and at all times herein mentioned was, the President of Defendant PHT.

37. Defendants Ben Brookhart and Erik Randesi are, and at all times herein mentioned were, the only people listed as an officer or manager at Defendant PHT in any public document freely available from the State of North Carolina and they were the only persons listed in common online business registries like the Better Business Bureau as having managerial authority.

38. Plaintiff has searched public records such as federal Employer

Identification Number registries and can find no record that PHT ever employed anyone other than Mr. Brookhart and Mr. Randesi in any managerial capacity.

39. On social media Mr. Brookhart and Mr. Randesi are regularly given and take personal credit for the claimed achievements of PHT.

40. Plaintiff alleges on information and belief that Defendant Ben Brookhart made the violative calls, ordered them made, knew the calls described above were being made and did nothing, or was willfully and recklessly ignorant of the fact his company was making the calls described above.

41. Or, in the alternative, Plaintiff alleges on information and belief that Defendant Erik Randesi made the violative calls, ordered them made, knew the calls described above were being made and did nothing, or was willfully and recklessly ignorant of the fact his company was making the calls described above.

## Actual Harm & Willful and Knowing Conduct

42. Mr. Sapan is angered and annoyed by these junk calls and has been harmed by the waste of his time during the calls themselves, the waste of time in having to break from other important tasks and spend time catching up after these junk calls, the waste of telephone service which he and not Defendants must pay for, the costs of having to pursue legal remedies, and in the aggravation and intrusion on his privacy of having to listen to the insistent metallic jangling of a

phone ringing in his home whether he answered a particular call or not.

43. As a proximate result of these intrusions, Plaintiff suffered damage in an amount according to proof, but no less than 3% of his monthly phone bills in March of 2013 since Defendants calls constituted 3% or more of the total calls to his phone during their junk calling campaign.

44. During at each of Defendants' calls, Plaintiff wanted to make or receive a call to/from someone else for his own personal or business reasons and was blocked from doing so by the line being tied up by Defendants.

45. Plaintiff alleges on information and belief that Defendants made the calls described above intentionally, in the sense that the number called was the one they meant to call in pitching their services.

46. Plaintiff alleges on information and belief that Defendants made the calls described above knowing that they were made in contravention of the TCPA and other telemarketing laws and regulations.

47. Mr. Sapan has been harmed by the junk calls complained of herein by the direct waste of his time during the calls themselves, the indirect waste of time in having to break from other important tasks and spend time catching up after these junk calls, the waste of telephone service which he and not Defendants must pay for, the costs of having to pursue legal remedies, and in the aggravation and consequent health effects of stress these illegal intrusions have caused.

## FIRST CAUSE OF ACTION
[TCPA Violation – Prerecorded Telesolicitation – For All Calls]

48. Plaintiff realleges all paragraphs above and incorporates them herein by reference.

49. Plaintiff is bringing this action pursuant to the provisions of the Telephone Consumer Protection Act of 1991 (47 U.S.C. §227 and 47 C.F.R. §64.1200 – "TCPA").

50. Subdivision (b) (1) (B) of Section 227 of Title 47 of the United States Code makes it unlawful for any person to "initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes or is exempted by rule or order of the Commission under paragraph (2) (B);"

51. Defendants have called Plaintiff's residential telephone line, using an artificial or prerecorded voice to deliver a message, without Plaintiff's express permission during the statutory period of the last 4 years, pursuant to 28 U.S.C. § 1658. These calls are the only calls known to Plaintiff at this time and Plaintiff states on information and belief, without yet having the aid of full discovery, that it is quite likely that Defendant has made many more violative calls to Plaintiff's residential telephone line. These calls were not made for any emergency purpose,

nor were these calls exempt under subdivisions (a) and/or (c) of section 64.1200 of title 47 of the Code of Federal Regulations.

52.  Subdivision (b)(3) of section 227 of title 47 of the United States Code permits a private right of action in state court for violations of 47 U.S.C. §227 (b) (1) (B). Plaintiff may obtain relief in the form of injunctive relief, or Plaintiff may recover $500.00 for each violation, or both.  If the court finds that defendants' violations were willful or knowing, it may, in its discretion, award up to three times that amount.

## SECOND CAUSE OF ACTION
[TCPA Violation – Do Not Call List – For All Calls]

53.  Plaintiff realleges all paragraphs above and incorporates them herein by reference.

54.  Plaintiff is bringing this action pursuant to the provisions of the Telephone Consumer Protection Act of 1991 (47 U.S.C. §227 and 47 C.F.R. §64.1200 – "TCPA").

55.  Subdivision (c) (2) of Section 64.1200 of Title 47 of the Code of Federal Regulations makes it unlawful for any person to "initiate any telephone solicitation" to "A residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations".

56. At all times relevant to this complaint, Plaintiff had registered his residential telephone number on the national do-not-call registry maintained by the U.S. Government.

57. Defendants have called Plaintiff's residential telephone line for solicitation purposes during the statutory period of the last 4 years, pursuant to 28 U.S.C. § 1658. These calls are the only calls known to Plaintiff at this time and Plaintiff states on information and belief, without yet having the aid of full discovery, that it is quite likely that Defendant has made many more violative calls to Plaintiff's residential telephone line. These calls were not made in error, nor did Defendant have express permission from Plaintiff to call, nor did Defendant have a personal relationship with Plaintiff. 37 C.F.R. § 64.1200 (c) (i), (ii), & (iii).

58. Subdivision (c)(5) of section 227 of title 47 of the United States Code permits a private right of action in state court for violations the national do-not-call registry rules promulgated thereunder. Plaintiff may obtain relief in the form of injunctive relief, or Plaintiff may recover $500.00 for each violation, or both. If the court finds that defendants' violations were willful or knowing, it may, in its discretion, award up to three times that amount.

/ / /

/ / /

/ / /

Complaint

## **THIRD CAUSE OF ACTION**
[Violation(s) of California Civil Code § 1770 (a) (22) (A) –
For All Prerecorded Telesolicitation Calls]

59.   Plaintiff realleges all paragraphs above and incorporates them herein by reference.

60.   California Civil Code § 1770 (a) (22) (A) requires that all recorded messages disseminated within the state be introduced by a live, natural voice giving the name of the entity calling, the name of the entity being represented, an address or phone number for that entity, and asking permission to play the recording.  Defendant's illegal prerecorded telemarketing calls to Plaintiff failed to comply with this requirement.

61.   As a proximate result of defendants' violation of Civil Code section 1770, plaintiff has suffered and continues to suffer damages in an amount not yet ascertained, to be proven at trial.

62.   Civil Code section 1780 (a) (2) provides for an injunction against future conduct in violation of Civil Code section 1770.

63.   Civil Code section 1780 (a) (4) provides for an award of punitive damages for violations of Civil Code section 1770.

64.   Civil Code section 1780 (d) provides for an award of attorneys fees for plaintiffs harmed by California Civil Code §1770 (a) (22) (A) violations.

## FOURTH CAUSE OF ACTION
[Trespass to Chattel – For All Calls]

65. Plaintiff realleges all paragraphs above and incorporates them herein by reference.

66. The conduct by defendants complained of herein, namely illegally calling Plaintiff's phone, constitutes an electronic trespass to chattel.

67. At no time did Plaintiff consent to this trespass.

68. As a proximate result of these intrusions, Plaintiff suffered damage in an amount according to proof, but no less than 5% of his monthly phone bill in March of 2013 since Defendants calls constituted 5% or more of the total calls to his phone in the one month at the height of their junk calling campaign.

69. In making the illegal calls described above, defendants were guilty of oppression and malice, in that defendants made said calls with the intent to vex, injure, or annoy Plaintiff or with a willful and conscious disregard of Plaintiff's rights. Plaintiff therefore seeks an award of punitive damages.

## FIFTH CAUSE OF ACTION
[Engaging in Unfair Business Practices – For All Calls]

70. Plaintiff realleges all paragraphs above and incorporates them herein by reference.

71. Because these telephone calls violate federal statutes, they are

unlawful business practices within the meaning of section 17200 of the Business and Professions Code.

72. As a proximate result of these intrusions, Plaintiff suffered damage in an amount according to proof, but no less than 5% of his monthly phone bill in March of 2013 since Defendants calls constituted 5% or more of the total calls to his phone in the two months at the height of their junk calling campaign.

73. Section 17203 of the Business and Professions Code entitles Plaintiff to an injunction enjoining defendants from engaging in unfair or unlawful business practices.

WHEREFORE Plaintiff prays for judgment against defendants, and each of them, as follows:

On the FIRST CAUSE OF ACTION:
1. For an award of $500.00 for each violation of 47 U.S.C. §227;
2. For an award of $1,500.00 for each such violation found to have been willful;

On the SECOND CAUSE OF ACTION:
3. For an award of $500.00 for each violation of 47 C.F.R. §64.1200 (c) (2);
4. For an award of $1,500.00 for each such violation found to have been willful;

///

On the THIRD CAUSE OF ACTION:

    5. For compensatory damages according to proof;

    6. For preliminary and permanent injunctions, enjoining Defendants, and each of them, from engaging in activity in violation of California Civil Code §1770 (a) (22) (A);

    7. For punitive damages;

    8. For attorney's fees;

On the FOURTH CAUSE OF ACTION:

    9. For compensatory damages according to proof;

    10. For punitive damages;

On the FIFTH CAUSE OF ACTION:

    11. For preliminary and permanent injunctions, enjoining Defendants, and each of them, from engaging in unfair or unlawful business practices pursuant to section 17203 of the Business and Professions Code;

On ALL CAUSES OF ACTION:

    12. For attorney's fees pursuant to California Code of Civil Procedure § 1021.5.

    13. For costs of suit herein incurred; and

    14. For such further relief as the Court deems proper.

DATED: September 6, 2016          **PRATO & REICHMAN, APC**

/s/Christopher J. Reichman, Esq.
By: Christopher J. Reichman, Esq.
**Prato & Reichman, APC**
Attorneys for Plaintiff
PAUL SAPAN